FILED

2009 May-14  PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **THEDORIS C. BROWN, an individual,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 2:08-CV-21-VEH** |
| **v.** | ) | |
| | ) | |
| **BIRMINGHAM FASTENER & SUPPLY, INC., a corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

## I.    INTRODUCTION

Before the Court is the Defendant's Motion for Partial Summary Judgment (Doc. 12.)  This case is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981 by the Plaintiff, Thedoris C. Brown, against her former employer, Birmingham Fastener & Supply, Inc. Plaintiff alleges that the Defendant discriminated against her on account of her race and her sex when the Defendant failed to give her a raise, demoted her, and ultimately discharged her. She also claims that the Defendant retaliated against her for complaining about her treatment.  Defendant maintains that Brown's claims are due to be dismissed because

she cannot state a *prima facie* case of discrimination under Title VII and because Plaintiff did not allege a cause of action for retaliation in her EEOC charge.  Because the Court finds that Brown can state a *prima facie* case of discrimination as to her pay raise claim, her demotion claim, and her termination claim, and because the Court finds that Brown's retaliation claim could reasonably be expected to grow out of her EEOC charge, the Defendant's motion is **DENIED**.

## II.   FACTUAL AND PROCEDURAL HISTORY[1]

Plaintiff, Theodora C. Brown ("Brown"), began her employment with Defendant, Birmingham Fastener & Supply, Inc. ("Birmingham Fastener") in 2000, when she worked as a contract laborer.  (Doc. 13, AF[2] 3.)  After working as a contract

---

[1]  These are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[2]  The designation "AF" stands for admitted fact and indicates a fact offered by the Defendant that Plaintiff has admitted in her written submissions on summary judgment, in her deposition testimony, or by virtue of any other evidence offered in support of her case. Whenever Plaintiff has adequately disputed a fact offered by the Defendant, the Court has accepted Plaintiff's version. The court's numbering of admitted facts (*e.g.*, AF 1) corresponds to the numbering of the Defendant's Statement of Facts as set forth in Doc. 13 and responded to by Plaintiff in Doc. 16.  A number following a decimal point corresponds to the particular sentence within the numbered statement of facts.  For example, (AF 5.2) would indicate the second sentence of paragraph 5 of the Defendants Statement of Facts is the subject of the Court's citation to the record. Similarly, the designation "AAF" stands for additional admitted fact and corresponds to Plaintiff's Statement of Facts contained in Doc. 16 and responded to by the Defendant in Doc. 19.  Any other facts referenced by the parties that require further clarification are dealt with later in the Court's opinion.

laborer for a period of time, she was retained in the Shipping Department by Joe Speights ("Speights"), who worked at Birmingham Fastener as Manager of Manufacturing.  (Doc. 13, AF 1-2.)  In August, 2002, Speights promoted Brown to Shipping Clerk and, three years later, when her supervisor was promoted, Brown received a promotion to Shipping/Receiving Supervisor.  (Doc. 13, AF 3-4.)

### A.    Denial of Plaintiff's Pay Raise

At the end of 2005 and the beginning of 2006, Birmingham Fastener moved all of its manufacturing operations to a facility in Ensley, Alabama that it had purchased in 2005.  (Doc. 13, AF 5.)  After the move was completed, Howard Tinney, President of Birmingham Fastener, spent significant amounts of time touring the new facility and observing the operations of the company.  (Doc. 13, AF 6.)  During his walkthrough, Howard Tinney noticed that many products in the shipping area were disorganized and that packaging material was damaged.  (Doc. 13, AF 6.) Additionally, several customers had complained about incorrect and/or damaged orders.  (Doc. 13, Tinney Decl. at ¶ 4.) Howard Tinney also informed Speights, on several occasions, that shipping was a problem and Speights spent significant time trying to address these issues.  (Doc. 13, Speights Decl. at ¶ 4.)

In April, 2006, Speights made recommendations for raises in the Manufacturing Division; Howard Tinney had final authority to approve or reject the

3

recommendations.  (Doc. 13, AF 7.)  Speights recommended that Brown receive a small raise but, because Howard Tinney had personally observed problems in the department Brown supervised, he denied Brown's raise.  (Doc. 13, AF 8; Tinney Decl. at ¶ 5.)  Brown was not the only supervisor who did not receive a raise; several white males, including James Snow, a "Tier 1" supervisor, as well as Brad Tinney, Vice President of Manufacturing, and Jeff Tinney, who were both related to the president, did not receive raises.  (Docs. 13, AF 11; 14, Tinney Decl. at ¶ 6.)  Eight other African-American supervisors did receive a raise.  (Doc. 13 AF 12.)  Brown was the only female supervisor who did not receive a raise.  (Doc. 13, Ex. 1 to Ex. F.)  Brown was the only black, female supervisor.  (Doc. 17, Ex. 4 at ¶ 6.)

### B.    Plaintiff's Demotion

After Birmingham Fastener moved to its new facility, Howard Tinney also decided to install a new material and product tracking system.  (Doc. 13, AF 13.)  To assist in the implementation of the new system, Birmingham Fastener temporarily transferred Frankie Jones ("Jones") to the new Birmingham facility.  (Doc. 13, AF 14.)  As part of the new system, Jones separated the Shipping/Receiving Department into three distinct functions, with a separate supervisor responsible for each function. (Docs. 13, AF 17; 14, Jones Decl. at ¶ 5.)

The three separate categories were entitled Shipping, Receiving, and Special

Projects. (Docs. 13, AF 17; 14, Jones Decl. at ¶ 5.) Prior to this change, Brown was responsible for all of these categories. (Doc. 13, AF 15.) Additionally, prior to the reorganization Brown had great discretion in selecting carriers and negotiating rates for the shipment of products. (Doc. 13, AF 16.) Subsequent to the reorganization, Howard Tinney decided to enter company-wide carrier contracts with specific carriers at pre-established rates. (*Id.*) Finally, prior to the installation of the new system, the Shipping/Receiving Supervisor was responsible for assigning an order to a specific product puller who had been individually assigned to that specific customer. (Doc. 13, AF 18.) The new system obviated this job function by permitting any product puller to pull an order. (*Id.*) Brown remained responsible for ensuring that products to be shipped were not damaged, complied with the customer order and were loaded properly onto the delivery trucks. (Doc. 13, AF 19.1.) However, some of Brown's duties in shipping were given to Cara Smith, a white employee who had been subordinate to Brown. (Doc. 14, Brown Dep. at 126:20-127:4.) In fact, Jones told Brown that she was to have nothing to do with the Shipping Department at all. (Doc. 14, Brown Dep. at 72:16-22.) Additionally, when Brown questioned Jones's decision to change shipping clerks, Jones told Brown that "you people" are too concerned with titles; Brown took this to be a racially derogatory comment. (Doc. 14, Brown Depp. at 102:4-10.) Despite this reduction in responsibility, Plaintiff's salary remained

5

unchanged.  (Doc. 13, AF 20.)

### C.    Plaintiff's Termination

During the time that Jones was temporarily transferred to Birmingham, Jones provided Brown with a memo stating that Brown's attitude needed to "improve immediately" and reminding her that "[r]espect must be shown to all salesmen, co-workers and your subordinates."  (Doc. 14, Ex. 4 to Ex. F.)

In August, 2006, Jones sent Brown a letter explaining that she was to report to Birmingham Fastener's Hanceville, Alabama facility to receive training on how to operate the hand scanner for the new tracking system.  (Doc. 13, AF 29.)  Besides Brown, several other employees, including the Shipping Clerk, Cora Smith ("Smith"), were included in the training.  (*Id.*)

On October 6, 2006, Brown received three "write ups" from Jones.  (Doc. 13, AF 30.)  The same day that she received the written warnings, she went to the human resources manager and explained that she was protesting the write-ups.  (Doc. 14, Brown Dep. at 86:7-87:17.)  The manager told Brown that she needed to talk with Jones about her dispute and Brown stated that she could not talk to Jones because he had already provided written and not verbal warnings.  (Doc. 14, Brown Dep. at 87:9-17.)  Before leaving the office, Brown also stated that she would go to the EEOC. (Doc. 14, Brown Dep. at 87:15-17.)   Immediately thereafter, Brown went to

6

Speights's office and explained her disagreement with the write-ups and she also expressed her intention to go to the EEOC.  (Doc. 14, Brown Dep. at 89:5-90:9.) Speights said that he wanted to talk with Brad Tinney before she went to the EEOC and, after speaking with Speights, Brad Tinney set up a meeting with Brown.  (*Id.*)

Brad Tinney then investigated the write-ups and Plaintiff's complaints about each.  (Doc. 13, AF 32.)  During the course of the investigation, Brad Tinney also learned of several statements that Brown had made about Cora Smith.   (*Id.*) Specifically, Brown told another employee that Smith was "stupid" because Brown would tell her how to get the orders out, but she would not do things the way Brown explained.   (Doc. 14, Brown Dep. at 80:8-18.)  Brad Tinney learned of the conversation because it had inadvertently been recorded on the voicemail of another employee.  (Doc. 13, AF 33.) Brad Tinney called Brown into his office and explained that she should help Smith as much as she could but that if Smith did not want Brown's help, then Brown should leave her alone.  (Doc. 14, Brown Dep. at 93:14-17.)  During the meeting, Brown again stated that she was going to the EEOC. (Doc. 14, Brown Dep. at 120:9-20.)

On the same day of her conversation with Brad Tinney, Brown told Smith that she was doing her job wrong in an area that was actually not the responsibility of either Brown or Smith.  (Doc. 13, AF 34.)  Smith walked off the job and quit.  (Doc.

7

13, AF 34.)  Subsequently, Brown was terminated for causing Smith to quit.  (Doc. 14, Brown Dep. at 94:13-23.)

Jones had caused several employees to leave Birmingham Fastener.  (Doc. 14, Brown Dep. at 57:17-59:12.)  Among these employees was Marcus Cole, a black truck driver Jones frequently would call on the two-way radio and divert to different locations.  (*Id.*)  Jones was not terminated for causing Cole or any other employee to leave.  (*Id.*)

### D.    Plaintiff's EEOC Charge and Initiation of the Instant Case

On November 10, 2006, Brown contacted the EEOC and was interviewed by an EEOC employee.  (Doc. 13, AF 36.)  Brown discussed her failure to receive a raise in 2006, her questioning of the denial of her raise and Birmingham Fastener's failure to provide a reason for the denial, her training in Hanceville, Alabama, and her issues with Smith in the Shipping Department.  (*Id.*)   Brown explained that she was terminated for making Smith quit.  (*Id.*)  At no time did she specifically indicate that she intended to bring a retaliation claim against Birmingham Fastener.  (*Id.*)

On November 17, 2006, Brown's EEOC charge was filed against Birmingham Fastener.  (Doc. 14, Ex. G.)  Therein, she alleged that Birmingham Fastener failed to give her a wage increase as shipping manager and that she was never given a reason for the denial of the wage increase.  (*Id.*)   Additionally, she explained that she was

8

discharged for causing Smith to quit and that a white male who caused other employees to quit had not been discharged.  (*Id.*)

The EEOC advised Brown on April 3, 2007, that it did not find merit to her charges and Brown subsequently arrived, unannounced, at the EEOC offices to discuss the case.  (Doc. 13, AF 38.)  At no point during this second interview did Brown indicate that Birmingham Fastener retaliated against her for any reason.  (*Id.*) After completing its investigation, the EEOC issued its Dismissal and Notice of Rights on October 4, 2007.  (Doc. 13, AF 39.)

Brown filed her Complaint (Doc. 1) on January 3, 2008, alleging that Birmingham Fastener violated both Title VII and 42 U.S.C. § 1981 by discriminating against her on account of her race and gender and by retaliating against her for making a discrimination complaint.  Following the completion of discovery, Birmingham Fastener filed the instant Motion for Partial Summary Judgment. (Doc. 14.)

## III.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(c) requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real*

*Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; i.e., facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to

point out to the court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## IV.    ANALYSIS[3]

### A.    Brown's Claims of Intentional Discrimination

Although Brown has brought claims under both Title VII and 42 U.S.C. § 1981, the elements required to prove a claim of intentional discrimination under § 1981 are the same as those required to prove a claim of intentional discrimination under Title VII. *Howard v. BP Oil Co.*, 32 F.3d 520, 524 n. 2 (11th Cir.1994). Thus, the Court addresses Brown's intentional discrimination claims under Title VII and §

---

[3] If the facts are in dispute, they are stated in the manner most favorable to the non-moving party. <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115.

1981 at the same time.

Brown may prove her claims of intentional discrimination either through direct evidence, circumstantial evidence, or by using statistics.  *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990); *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1322-23 (11th Cir.2006).  Brown relies on circumstantial evidence to prove her claim, and therefore the court will apply the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), to evaluate her claim.

Under this framework, the plaintiff must first establish a prima facie case which consists of showing that (1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated  employees more favorably; and (4) he was qualified to do the job."  *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir.2000). If the plaintiff is successful in satisfying these elements, he creates a presumption of discrimination, which defendants may rebut by providing a legitimate, nondiscriminatory reason for the adverse action. *McCann v. Tillman*, 526 F.3d 1370, 1372 (11th Cir. 2008) (citing *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir.2006)).

In the final step of the burden-shifting analysis, if the employer meets "its burden of production, the presumption of discrimination is rebutted, and the inquiry

13

proceeds to a new level of specificity, in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." *Rioux v. City of Atlanta, Ga.* 520 F.3d 1269, 1275 (11th Cir. 2008) (internal quotation marks and citations omitted). At this stage, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997)).

In the instant case, Birmingham Fastener argues that Brown cannot establish a *prima facie* case of disparate treatment as to her pay raise claim, her demotion claim, or her termination claim. The Court first turns to whether Brown can establish her *prima facie* case regarding her pay raise claim.

> 1. Brown can establish her *prima facie* case with respect to her pay raise claim.

Birmingham Fastener argues that Brown cannot identify similarly situated white or male employees who were treated more favorably. Specifically, Birmingham Fastener argues that white supervisory employees, James Snow, Brad Tinney, and Jeff Tinney, were not given raises and that eight black supervisors did receive a raise. (Docs. 13 at 20; 19 at 3-4.) Brown, on the other hand, contends that the white

14

employees were higher-level employees who did not have similar job duties or positions within Birmingham Fastener.  (Doc. 16 at 10.)  Neither of the parties cite to a single case in support of their arguments.

"As part of the Title VII plaintiff's prima facie case, the plaintiff must show that his employer treated similarly situated employees outside his classification more favorably than herself." *Hollifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *Coutu v. Martin Cty. Bd. of Cty. Commissioners*, 47 F.3d 1068, 1073 (11th Cir.1995)).  "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Id.*  "The burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S.248,  253 (1981).

Curiously, Birmingham Fastener claims that because three white men were not given raises, Brown cannot establish a *prima facie* case.  However, the evidence in the record demonstrates that there were several white male employees who were given raises, while Brown, the only black female employee, was not given a raise. (*See* Doc. 14, Ex. 1 to Ex. G.) Birmingham Fastener does not cite a single case in support of its argument, much less in support of the proposition that the existence of one dissimilarly situated comparator creates an irrefutable conclusion that Brown

cannot establish her *prima facie* case.  The Court's own research has not unveiled such authority and, in any event, "the onus is upon the parties to formulate arguments." *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995). "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it . . . ." *Id.* at 599. *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.3d 1569, 1576 (7th Cir. 1987)(stating that an argument made without citation to authority is insufficient to raise an issue before the court).

Further, as the moving party, Birmingham Fastener bears the burden of proof. Although Birmingham Fastener could prevail by pointing to the absence of evidence on the Plaintiff's side, those circumstances simply do not exist in the instant case. Brown has identified an ample number of individuals who are either white or male (or both) to establish this element of her *prima facie* case for disparate treatment on the basis of both race and gender.

> 2.   Brown can establish her *prima facie* case with respect to her demotion claim.

Birmingham Fastener raises similar arguments with respect to Brown's claim

of disparate treatment through a demotion.  Specifically, Birmingham Fastener argues that the reorganization of the shipping/receiving department eliminated Brown's responsibilities and that the duties were not transferred to Smith, a white employee; rather, they were eliminated entirely.  (Doc. 13 at 21.)  Based on these contentions and the fact that Brown retained her same salary, Birmingham Fastener claims that "it is clear that Plaintiff cannot show that she as treated less favorably than other non African-Americans." (*Id.* at 22.) Brown, on the other hand, argues that Birmingham Fastener, through Jones, barred her from exercising any of her supervisory duties and that her job duties were transferred to Smith, a white employee.  (Doc. 16 at 11.) Further, Brown notes that evidence in the record suggests that, after Jones's arrival, every black employee had been either terminated or demoted by the time she was fired.  (Doc. 16 at 11-12.)  Again, neither party cites to any legal authority in support of their arguments.

However, it is clear that Birmingham Fastener's motion is due to be denied based on the evidence in the record.  Brown, in her deposition, testified that Jones transferred her shipping duties to Smith.  (Doc. 14, Brown Dep. at 126:20-128:2.)  In fact, according to Brown, Jones told her that Smith was now running shipping.  (Doc. 14, Brown Dep. at 127:21-128:2.)  This evidence, which is to be credited in Brown's favor as the non-movant, is sufficient to establish Brown's *prima facie* case, since it

is clear that Brown's shipping duties were transferred to a white employee.[4]

       3.    <u>Brown can establish her *prima facie* case with respect to her termination</u>.

Birmingham Fastener raises a one-paragraph argument, devoid of citations to legal authority, that Brown cannot use Jones as a comparator in her termination claim because "Jones'[s] actions with employees are not akin to Plaintiff's in that he had assumed strong managerial duties." (Doc. 13 at 23.) As a consequence, it argues that "[s]ince Plaintiff and Jones are not similarly situated, Plaintiff cannot establish a prima facie case of gender discrimination." (*Id.*) Birmingham Fastener does not mention racial discrimination in this section of its brief.

As the sole basis for distinguishing Jones and Brown, Birmingham Fastener argues that Jones had authority to hire and fire employees on his own, while Brown could do so only with the approval of upper management. (Doc. 13 at 22.) Birmingham Fastener cites only one portion of the record in support of this supposed fact, a portion of Brown's deposition. (Doc. 13 at 23 (citing Doc. 14, Brown Dep. at

---

[4]  Brown's complaint is a shotgun pleading in that it contains a general statement of facts and reincorporates the entire statement of facts into each count of the complaint. (*See* Doc. 1.) Although Brown also brought a claim for disparate treatment on the basis of gender, none of her factual allegations with respect to her demotion include gender and neither of the parties have addressed gender in the short sections of their briefs devoted to Brown's demotion. Consequently, the Court assumes that Brown does not intend to assert a claim of sex discrimination with respect to her demotion. This is a logical conclusion, since the only identified comparator discussed by either party is a female. No evidence in the record suggests that a male counterpart to Brown was treated more favorably than she was.

86.)  However, this citation in the record does not establish that Jones had authority to hire and fire employees on his own, nor does it establish that Brown did not have such authority.  The cited page of the deposition merely states that the shipping manager <u>who hired Brown</u> needed to have her hiring approved by Speights. (Doc. 14, Brown Dep. at 85:19-86:6.)  Although Brown later took over the position of shipping manager, nothing cited to by the Defendant suggests that, when Brown held the position, she lacked this authority. The evidence is simply insufficient to establish that <u>Jones</u> is not a proper comparator.  Birmingham Fastener's <u>arguments</u> that Brown and Jones are not similarly situated is not a sufficient basis to grant summary judgment.   *See Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980)[5] ("Statements by counsel in briefs are not evidence.").   As the moving party, Birmingham Fastener bears the burden of proving that Brown cannot establish her *prima facie* case.  It has failed to do so here.[6]

_____

[5]  *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

[6]  Although Brown addresses the issue of pretext in her brief in opposition, Birmingham Fastener's brief in support of its Motion for Summary Judgment and its reply brief decline to raise an argument as to pretext and have only moved for summary judgment on Brown's disparate treatment claims on the ground that she cannot state a *prima facie* case.   Because the Court will not grant summary judgment on an issue not raised by the Defendant, it does not reach the issue of pretext here. *See supra* at 15 (explaining that it is the party's responsibility to formulate arguments and that a party cannot rely upon the Court to create arguments on its behalf).

### B.      Brown's Retaliation Claim[7]

Birmingham Fastener has challenged Brown's assertion of a retaliation claim under Title VII on the basis that she has not exhausted her administrative remedies. (Doc. 13 at 23.)  According to Birmingham Fastener, because Brown failed to allege any facts regarding retaliation in her EEOC intake interview or in her follow-up interview after receiving Birmingham Fastener's position statement, Brown failed to disclose the factual basis for her retaliation claim and has consequently failed to exhaust her administrative remedies.  (Doc. 13 at 24.)  Brown, on the other hand, argues that the notes from her EEOC interviews indicate that she challenged the Defendant's denial of her raise and was subsequently harassed and terminated by management.  (Doc. 16 at 16.)

While it is accurate that the notes from Brown's EEOC intake and her EEOC charge indicate that Brown was never given a reason for the denial of her raise, there is no mention of Brown's threat to take her complaints to the EEOC after Jones gave her three "write-ups."  (*See* Doc. 14, Ex. G.)

"The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation."

---

[7]  Birmingham Fastener does not seek summary judgment on Brown's retaliation claim brought under 42 U.S.C. § 1981.  (*See* Doc. 13 at 2, n.1.)

*Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000) (citing *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir.1985)).  "No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge." *Id.* (citing 42 U.S.C. § 2000e-5). Among other requirements, a charge should include "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3).

The function of the exhaustion requirement is to ensure "that the [EEOC has] the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir.1983); *see also Wu v. Thomas*, 863 F.2d 1543, 1548 (11th Cir.1989) ("The purpose of the filing requirement is to insure that the settlement of grievances be first attempted through the office of the EEOC.") (internal quotations and citations omitted). However, "judicial claims [without the filing of an EEOC charge] are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint." *Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1279-1280 (11th Cir. 2004) (citing *Wu*, 863 F.2d at 1547). The Eleventh Circuit has also "cautioned that allegations of new acts of discrimination are inappropriate." *Id.*

In light of these requirements, the Eleventh Circuit has held that a "'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Alexander*, 207 F.3d at 1332 (quoting *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 589 n. 8 (11th Cir.1994)). "Courts are nonetheless extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]" and, as a result, "the scope of an EEOC complaint should not be strictly interpreted." *Gregory*, 355 F.3d at 1280 (internal citations and quotations omitted). "To compel the charging party to specifically articulate in a charge filed with the Commission, the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected." *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir. 1971) (quoting *King v. Georgia Power Co.*, 295 F.Supp. 943, 947 (N.D. Ga. 1968)).

Based on the above-stated legal principles, the Court finds that Brown has not failed to exhaust her administrative remedies. A retaliation charge could reasonably be expected to grow out of Brown's questioning of why she did not receive a raise. Further, Brown acted without the assistance of counsel in filing her EEOC charges, which entitles her to greater leeway with the Court. *See Gregory*, 355 F.3d at 1280-

1281 (citing *Danner*, 447 F.2d at 161-162).  Therefore, Plaintiff's retaliation claim brought under Title VII is not barred.

## V.    CONCLUSION

In light of the above findings, the Defendant's Motion for Partial Summary Judgment (Doc. 12) is due to be **DENIED**.  Genuine issues of material fact preclude the Court from finding that Brown cannot establish her *prima facie* case of either race or sex discrimination as to her disparate treatment claims involving the denial of her raise, her demotion, or her termination.    Further, the Court finds that Brown has properly exhausted her administrative remedies with respect to her retaliation claim because her retaliation charge could reasonably be expected to grow out of her EEOC complaint.    A separate order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this the 14th day of May, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge